58 So.2d 733

**SUPERIOR OIL CO. v. CASE et al.**

No. 40270.

March 24, 1952.

Rehearing Denied April 28, 1952.

Moss & Graham, Lake Charles, for defendants-appellants.

Obier & Middleton, Plaquemine, for defendants-appellees.

FOURNET, Chief Justice.

The Superior Oil Company, producing oil from two wells drilled by it in 1949 on a 160 acre tract of land in Iberville Parish, described as the E/2 of the NW/4 and the W/2 of the NE/4 of Section 72, instituted this concursus proceeding for the purpose of having judicially determined the ownership of a ¼ mineral interest therein, depositing in the registry of the court, as they accumulated, the proportionate share of the funds accruing from this production. As parties defendant the company impleaded the respective claimants of this interest, i. e., (1) the widow and heirs of Cyrus Case, who, as the owner in indivision of this land with Victor Kurzweg, had, on January 23, 1935, sold to B. J. Wynne a half of his undivided half (or ¼) mineral interest in the tract, and (2) Wynne and those claiming through him, particularly Mrs. Ursula Victery and her two minor children, Harry Clopton and Patricia Ann Victery, in whose favor Wynne had, on January 10, 1945, executed a deed representing a ⅓ of this ¼ interest, pursuant to a counter letter supposedly written by Wynne on December 16, 1935 (and which was attached to the Victery deed), in which he stated the interest secured from Case in 1935, while standing in his name, had actually been bought for Wynne, W. E. Butler, and H. C. Victery (who died April 11, 1943) in equal shares of one-third each, and that as soon as the rentals from the property had paid Wynne back the purchase price, he would convey to these named parties their respective interests.

Inasmuch as more than ten years elapsed before any drilling operations were begun on this tract, in the lower court Wynne and those claiming through him (they are the appellants here) contended that although this mineral interest had been purchased in Wynne's name alone in January of 1935, his acknowledgment later that year that the ownership thereof was equal in him, Butler, and Victery, and the vestiture of an undivided interest in these minerals in Victery's two minor children upon his death in 1943, interrupted or suspended the prescription then running, not only as to these minors, but also as to all of their co-owners, Article 802 of the Revised Civil Code, the prescription at that time having run only 8 years, 2

months, and 19 days; and that despite the adoption of Act No. 232 of 1944, LSA-R.S. 9:5805, providing that minority does not have the effect of interrupting the running of prescription as to major co-owners, the prescription remained and continued suspended and interrupted as to the minors, although it did begin on July 26, 1944, the effective date of the act, to run again against Wynne, Butler, and Mrs. Victery, and would have prescribed 1 year, 9 months, and 11 days later had it not been for the fact that it was again interrupted on November 23, 1945 by the drilling of a well, thus entitling them and the minors to the royalties deposited in the court. In the alternative, if Act No. 232 of 1944 is held to have a retroactive effect, then it is unconstitutional.

The Case claimants, on the other hand, contended the mineral servitude created on January 23, 1935, prescribed exactly ten years later for nonuse, and the formal conveyance to the widow and minor children of Victery on January 10, 1945, having been made for the sole purpose of placing an interest in these minors to effect the suspension of the prescription then running, was in fraud of their rights and, as a simulation without consideration, transferred nothing and has no legal significance whatsoever, and they are, consequently, entitled to the funds in the registry of the court. In the alternative, if the conveyance is held not a simulation, then the letter written by Wynne in

December of 1935 was only an unrecorded promise to sell, vesting no interest in the minors until the formal conveyance on January 10, 1945. In the further alternative, that if the minors did acquire a valid interest in these minerals, then, by reason of Act No. 232 of 1944, their minority did not have the effect of interrupting the prescription running against their major co-owners, and their rights, in any event, prescribed on January 22, 1945.

The trial judge, in a well-considered opinion, in which all of the facts and issues are covered thoroughly and in detail, concluded that the transfer to Mrs. Victery and her two minor children in 1945 was a simulation pure and simple, executed for the ostensible purpose of interrupting the prescription to accrue within a matter of days on the servitude created by Case in 1935, and rendered judgment decreeing the interest in controversy reverted to the widow and heirs of Case as the owners of the burdened property at the expiration of the ten year prescriptive period, and that they were, therefore, entitled to the funds on deposit with the court. Wynne and those claiming interests through him are appealing from this judgment.

A study and analysis of the record readily discloses the correctness of the trial judge's conclusion. While in the letter Wynne purportedly addressed to Butler and Victery on December 16, 1935, for the declared purpose of giving them "some evidence of * * * ownership,

if anything should happen" to Wynne, it is stipulated that although the "eighty royalty acres out of two 160 acre tracts belonging to Cyrus Case" had been purchased in Wynne's name alone, he was nevertheless, holding this interest for all three, in the proportion of one-third each, and Wynne further stipulated he would execute a conveyance to each of them of their interest *"as soon as the rentals pay back the purchase price,"* it is interesting to note that despite the fact sufficient rentals were accumulated to repay Wynne the $800 he had put up as consideration for the transfer from Case as early as 1937, Wynne did not comply with his asserted obligation to transfer this interest until seven days prior to the accrual of this prescription, when he executed the instrument he is now contending interrupted this prescription. To the contrary, as far as the record discloses, he at all times treated this property as belonging to him exclusively, even as late as May of 1944 when he executed in his own name a lease in favor of the Humble Oil Company, and he has never accounted to his supposed co-owners for their proportionate share of the monies paid him as consideration for leases executed by him individually and together with Cyrus Case, or, for that matter, for any of the delay rentals paid him during all of these years. (Emphasis added.)

Furthermore, it is apt to observe here that up until the time of the execution of the deed to Mrs. Victery and her two minor children in 1945 there is nothing to indicate any of the Victerys ever had any knowledge of Victery's supposed ownership in this property. Obviously he left no memorandum or evidence of such ownership that would have apprised his widow and heirs of their right to this interest, for it is not listed or even mentioned in his succession proceedings. And while it is admitted that if Butler were present he would testify he had received an original counterpart of the letter of December 16, 1935, it is significant that Wynne did not even see fit to transfer Butler's purported interest to him in 1945 when he did place this interest in Victery's widow and minor children.

The conclusion we have reached makes it unnecessary for us to distinguish or discuss the authorities relied on by the appellants, which are clearly inapposite from a factual standpoint. From the standpoint of fact, we think more analogous and controlling here the case of Roy O. Martin Lumber Co. v. Hodge-Hunt Lumber Co., 190 La. 84, 181 So. 865, 867, wherein it was most aptly observed: "We are not confronted with a case where we are called on to protect a minor's interest but are confronted with a case wherein minors are interposed for the sole purpose of defeating the landowner of his rights and (are) * * * seeking by manipulation and subterfuge to continue a servitude without developing or producing oil or

making any effort to that end as was contemplated by the parties when the servitude was granted."

For the reasons assigned, the judgment appealed from is affirmed.